672 A.2d 717

DENNIS PRYOR, APPELLANT, v. NEW JERSEY DEPARTMENT
OF CORRECTIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 14, 1996—Decided March 8, 1996.

Before Judges DREIER and KESTIN.

Appellant *Dennis Pryor* submitted a *pro se* brief.

*Deborah T. Poritz,* Attorney General, attorney for respondent (*Mary C. Jacobson,* Assistant Attorney General, of counsel; *William P. Flahive,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Appellant, Dennis Pryor, is an inmate in the correctional system, serving a life term for aggravated sexual assault. On July 13, 1995, he was escorted to a scheduled therapy session with professional staff at the Adult Diagnostic Treatment Center. Upon arriving and learning that Lawrence Turek, a staff clinical psychologist, was to participate in the session along with Dr. Kay Jackson and Lori Lessin, also staff therapists, Pryor objected to Turek's presence in language that was crude, coarse, vulgar and offensive. Turek filed a disciplinary report in which he reported, *in haec verba,* the words used, noting that they were uttered "loudly and angrily," and "followed up with other expletives before escorted back to wing [sic]." The two officers who had escorted Pryor were also named as witnesses.

Pryor was charged with having violated one of the "Inmate Prohibited Acts" set out in rules governing inmate discipline, specifically .304, "using abusive or obscene language to a staff member." *N.J.A.C.* 10A:4–4.1(a).304. At the hearing on the charge, Pryor admitted using the words attributed to him, but asserted that he was speaking only to Dr. Jackson and not directly to Mr. Turek. The disciplinary hearing officer summarized the evidence supporting his formal finding that Pryor had uttered the offending words and had, therefore, committed a .304 violation: "Inmate was to meet with Dr. Jackson when he found out Mr. Turek would also be there he passed the comment in both their presences [sic]...."

The sanction ordered was seven days of detention and a thirty-day loss of recreation privileges. The reason stated for the sanction was: "Inmate must have better control over his mouth. This is disrespectful to staff. Inmate has several priors (.304)."

On internal appeal, the finding and determination were upheld by the Superintendent with the following explanation: "The sanction imposed was proportionate to the offense in view of prior disciplinary history and present custody status."

No motion for a stay pending appeal was made either to the Superintendent or, after this appeal was filed, to us. Apparently, appellant has served the disciplinary sanction imposed. In the conclusion to his brief, he seeks, in addition to expungement of this matter from his record, to be "monetarily reimbursed for sanctions already imposed and served out."

Pryor argues on appeal, as he has throughout, that his statement, while uttered in Mr. Turek's presence was not directed to Turek, but, rather, was a statement, addressed to Dr. Jackson, of Pryor's feelings about Turek's involvement in the scheduled therapy session. Appellant stresses that he was expressing an emotion or attitude, as he had been instructed to do in previous therapy sessions he had attended. In addition to the foregoing argument, appellant also raises several procedural due process issues. Because we perceive that the charge must be reversed on the merits, we do not reach the procedural issues.

We regard the application of prohibited act .304, "using abusive or obscene language to a staff member," to have no valid application in the circumstances of this matter. Although there is every reason to have such a standard for the sake of decency and good order, and to apply it to regular, everyday communication between inmates and staff persons in the corrections system, what occurs in the context of psychotherapy is a thing apart. It is axiomatic that persons engaged in therapy, whether individually or in groups, must, with relative freedom, be at liberty to recount their experiences, articulate their attitudes, and express their feelings. Without some license in this regard, the therapeutic process would have little prospect of success.

It follows that language which is inappropriate in ordinary discourse, and especially cannot be countenanced in circumstances requiring a high degree of order or discipline, must be tolerated, if

not entirely permitted, in the context of psychotherapy. We claim no expertise to know what the limits, if any, upon such expressions in therapy ought to be, but we know enough to conclude that a person who might legitimately take offense to a comment made in day-to-day discourse, must, when functioning as a therapist, have a thicker skin.

We have been given no reason, certainly not on the record before us in this case, to rule that the standard embodied in prohibited act .304 is anything but appropriate in the everyday conduct of prison affairs between inmates and staff. We hold only that it is not a valid basis for imposing disciplinary punishment for a statement made in the context of psychotherapy. Putting aside threatening words or those that directly exhort others to disobedience or violence, as well as acts that threaten personal safety or institutional security, standards of verbal expression that appropriately govern ordinary circumstances cannot, in the absence of special sanction, be seen to apply in the same way to psychotherapy.

Because we reverse the disciplinary adjudication in this matter as based upon a standard invalidly applied to the circumstances in which the offending statement was uttered, it is fitting that the fact a disciplinary charge was filed and the result thereof be expunged from appellant's records. There is, however, no basis for any monetary award as sought by appellant.

Reversed; expungement ordered.